[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was brought by the plaintiff wife, whose complaint returnable to this court September 6, 1994, sought a dissolution of the parties' marriage on the ground of irretrievable breakdown. She also sought custody and support of the parties' then minor child, alimony, an equitable division of real and personal property and other relief, as on file.
The defendant husband appeared by counsel but filed no answer or cross complaint. At the trial, the parties, a licensed real estate broker called by the plaintiff, and a licensed real estate appraiser called by the defendant testified. Numerous documentary materials were introduced into evidence, including income tax returns, appraisal and market valuation reports, records of mortgage transactions, loan documents and credit card statements.
Each spouse submitted financial affidavits and written proposed orders and claims for relief. Counsel made oral argument. From the evidence, I find as follows.
The parties married December 22, 1973, at Norwich, Connecticut. The wife's birth name was Cote. She has resided continuously in this state for at least one year before the CT Page 120 filing of the complaint, August 31, 1994. The couple had one minor child, issue of the marriage, Emily E. Sweeney, born March 14, 1977, who became 18 during this litigation. Emily graduated from high school and is now attending college. No other minor children were born to the wife since the date of the marriage. Neither party is a recipient of public assistance, all statutory stays have expired and this court has jurisdiction.
The wife is 47 years old, in good health, and has BA and MA degrees. She has taught elementary school for the past 24 years and has worked throughout the marriage, except for a short break for her pregnancy She earns $1,048[1] per week gross, $668 per week net.
She has substantial health and life insurance benefits and a teacher's retirement plan to which she contributes, and in which she is fully vested.
The defendant husband is 62 years of age, in good health, except for a heart problem, which has required several angioplasties. He is a high school graduate. He was a self-employed carpenter-contractor until about 1985, when he began employment with the State of Connecticut Labor Department first as an executive assistant to its Commissioner, then as a mediator, which position he still holds. He also had some investment income in 1991 and 1992. He served in the state legislature for 18 years. He earns $991 per week gross, $739[2]
per week net. He has health and life insurance benefits, is furnished a state vehicle for business use, and is currently vested in the state employees' retirement plan from his combined service as legislator, executive assistant and mediator.
This marriage is the wife's first, the husband's second; his first ended in divorce. The husband's and family's finances were a constant source of friction and disagreement between the parties. They maintained separate checking accounts and funds. The husband was secretive about his financial affairs and had difficulties in making timely payments of his allotted share of the family bills. He was also often delinquent over his own personal and business bills. In 1986, the wife agreed to refinance the second mortgage on the family dwelling in order to pay a number of bills the husband had agreed to be responsible for, including a credit card balance. She also agreed to take over the family finances, while the husband agreed to stop charging on credit cards. However, he CT Page 121 continued to do so, and kept knowledge of his financial affairs from her, going so far as to intercept default and delinquency notices. He continued to spend beyond his means. There was also a physical confrontation in which the wife sustained bruises, largely because the husband restrained her. It is unnecessary to further discuss, in the context of this case, additional details of the behavior of each spouse to the other. Although they have remained in the family dwelling throughout this proceeding, the marriage has in fact disintegrated, and is now irretrievably broken down, despite the protestation by the husband of his love for the wife. The greater share of the responsibility for its destruction must lie with the defendant husband.
The parties enjoyed a moderate lifestyle. Their only child went to a parochial school for two years at significant expense. They reside in a home the husband built during 1978-1979 on a lot they purchased for $5,000, with the wife's savings. They financed the home with construction mortgages totalling $65,000; the husband acted as a general contractor and did much work himself during the construction.
I find that the valuations provided by the expert testimony are flawed, mainly because of the absence of adequate comparable sales. Taking the testimony and reports of the experts into account, and applying the court's own general knowledge of the elements of value, I find the home at 66 Warren Street, Norwich, Connecticut, to have a value of $105,000. It is encumbered by a first mortgage whose balance is $31,652[3] and a second mortgage whose balance is $46,490, leaving an equity of $26,858.
The parties have accumulated assets modest in value (apart from their pensions). These include a 1989 Ford automobile owned by the wife valued at $2,500; the wife's bank account of $86; several life insurance policies without cash value, her vested retirement benefit of $1,960 per month payable beginning June, 2008 (retirement age at 60; her retirement benefit has a present value of $162,586) and a custodial savings account for the parties' daughter, Emily, with a balance presently about $7,000, which the wife is devoting to the daughter's college expenses. This account, which was formerly held in the names of the wife and Emily jointly, was transferred into a custodial account during this litigation, and was not reported on the plaintiff's financial affidavit. The wife has CT Page 122 contributed toward her daughter's college expenses, and with grants and loans, Emily's expenses have been met through her freshman year.
The husband reports on his financial affidavit the following assets: a 1988 Mercury automobile valued at $3,519; a 1984 Mazda truck valued at $375; carpenter's and miscellaneous tools valued at $1,400; and bank accounts of $850. He also has a retirement benefit of $1,990 per month, which would have been payable beginning February 1, 1995, if he had chosen to retire. His retirement benefit has a present value of $265,224. No information has been provided relating to the amount of his social security[4] benefits, which could also provide him with immediate income if he retired.
Against these assets, the parties report liabilities on their financial affidavits as follows: husband, $30,185, including six different credit card balances which total over $19,000; an IRS debt of $3,444; and credit union loans of about $6,210; wife, $34,969, which includes $20,000 (more or less) of the same credit card liabilities[5] reported by husband, the IRS indebtedness, which she estimates is over $8,000; a credit union loan of $2,769 and her own miscellaneous credit card and store charge accounts of $4,400. There also may be unpaid state income taxes due.
The parties refinanced the second mortgage on their home three times, with the first transaction occurring in 1986. From the proceeds of these refinances, I find that the husband received directly or indirectly, proceeds in excess of $39,000. This included repayment of: his car loan of $8,014, two CBT loans totalling $4,400, past due real estate taxes of $12,709, which were his agreed upon obligation to pay, and about $14,000 which was disbursed for credit card, insurance and utilities debts, also his responsibility. Thus, it can be seen that the husband, in effect, has already received from the home more than the present equity in it, and the home equity has been greatly encumbered and reduced by the succession of refinance transactions.
The parties, at least since 1986, have had almost comparable salaries. They presently have equal employability and earning capacities. During the past eight years, the husband has generally earned, on average, a few thousand dollars more per annum in gross income than the wife. Despite these CT Page 123 higher gross earnings, he withheld federal income taxes from his income at a lower rate than the wife, causing her to bear a disproportionate share of the income tax burden for several years. The onesidedness of the tax sharing was exacerbated by the husband's understatement or omission of investment income in 1991 and 1992, resulting in additional income taxes due the Internal Revenue Service of over $7,000, which the parties offered to pay at the rate of $150 per month. Also, in one year an income tax refund was applied to this debt. The husband claims he has been repaying the IRS at the rate of $378 per month. It is unclear from the evidence, whether the husband, who agreed to make these payments, has wholly complied with this obligation, although it may appear so if his financial affidavit is accurate with respect to the present IRS balance due.
The parties' monetary contributions to the marriage have been approximately equal. So also have been their nonmonetary contributions; the wife was the primary homemaker and care giver to their child, the husband used his labor and considerable skills to build the home, improve it and maintain it. However, the husband's management of his finances have contributed much to the difficulties of the parties' present financial situation, and the extent of their indebtedness.
It is significant to note that the husband has substantial vocational skills, as a carpenter, contractor and mediator. It is conceivable that he could retire now, receive his retirement and social security benefits, and also resume self employment, in a field related to his experience, thus perhaps increasing his net income during the remainder of his work life expectancy.
It is also conceivable that the parties, working together, could have refinanced the two mortgages[6] to a single mortgage at a lower `blended' and fixed interest rate, thereby effecting a reduction in their living expenses.
The court cannot conclude from the evidence, under the circumstances of this case, whether either party has a better opportunity than the other to acquire capital assets and income in the future.
The court requested that the parties work out the distribution of their tangible personal property (i.e. household furnishings and furniture) and advise the court. The parties CT Page 124 have not done so. At the conclusion of the hearing, the court ordered that all pendente lite orders remain in effect.
I have considered all of the criteria in General Statutes §§ 46b-81 and 46b-82 in the fashioning of the financial awards set forth and the taxable implications and consequences of said awards. Accordingly, the following is ordered.
(1) Judgment is entered dissolving the parties' marriage on the ground of irretrievable breakdown.
(2) All right, title and interest in the marital dwelling located at No. 66 Warren Street, Norwich, Connecticut, is assigned to the wife, subject to the mortgages thereon, which she shall pay and save the husband harmless therefrom.
(3) The following is also assigned to the wife: her 1989 Ford automobile, her bank account; and, her retirement benefits, provided, however, she shall irrevocably designate the husband as survivor beneficiary thereof. In the event he predeceases her, said survivor beneficiary designation shall terminate.
(4) The following is assigned to the husband: his 1988 Mercury and 1984 Mazda motor vehicles; his carpentry and `other' tools; his bank accounts; his office furniture; and, his retirement benefit, provided, however, there is assigned to the wife 10 percent thereof, valued as of the date of this decree, and she shall be designated irrevocable survivor beneficiary of the remainder of the benefit retained by the husband. In the event she predeceases him, the survivor beneficiary designation shall terminate, and the 10 percent portion set out to the wife shall revert to the husband If the retirement plan so permits, the wife's 10 percent portion shall go into immediate pay status.
(5) Qualified Domestic Relations Orders (QDROs) or other suitable instruments shall be created to effectuate the orders in paragraphs 3 and 4 above.
(6) The husband shall vacate the marital premises on or before February 29, 1996, and shall be responsible for the payments ordered pendente lite due for January and February, 1996. If he vacates before February 1, 1996, then he shall have no obligation to make the payments due for February. CT Page 125
(7) Each party shall irrevocably designate the other as beneficiary of his or her employment-related life insurance policy. Said beneficiary designation shall terminate if the beneficiary predeceases the insured. Said policies shall be maintained throughout each party's employment, and, upon retirement to the maximum extent. Each shall execute and deliver an authorization to the other, so that information relating to the status and good standing of each policy may be obtained by the beneficiary thereof.
(8) The husband shall pay and save harmless the wife from all of the liabilities shown on his Schedule 3 of her financial affidavit, dated December 22, 1995, and any State of Connecticut income tax liability arising from the years 1991 and 1992.
(9) The wife shall pay and save harmless the husband from the following liabilities shown on Schedule 3 of her financial affidavit dated December 22, 1995: Sears, Visa, Jordan Marsh, Filene's and her credit union loan.
(10) Each shall pay to the other the sum of one dollar per year alimony which shall terminate upon the death of either party, only modifiable by the payee in the event the payor former spouse fails to indemnify and save harmless the other spouse from his or her obligations listed in paragraphs 8 and 9. This alimony obligation is intended as support, as the requirement that each party pay the obligations allocated is actually in the nature of support for the other, and therefore, said alimony obligation shall not be affected by any discharge in bankruptcy. No other alimony award is made.
(11) Each party shall be entitled to claim as deductions one half of the mortgage interest and real estate taxes paid during 1995 on their respective income tax returns, and the wife shall be entitled to claim their daughter as a dependency exemption.
(12) Each party shall pay his or her own counsel fees.
(13) Each shall take, have and own their own clothing, jewelry and personal effects. The remaining tangible personal property shall be divided as follows: the wife shall CT Page 126 choose one item, then the husband shall choose one item, and so on, until all of the items have been divided. Articles such as a china service, a kitchen table and matching chairs, a bedroom set, etc., shall be considered a single `item'.
(14) All documents and other instruments incidental or necessary to the implementation of the foregoing orders shall be completed and exchanged within thirty (30) days hereof.
Teller, J.